UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KENDRICK MEDLOCK,

        Plaintiff,

v.

TONY TRIERWEILER et al.,

        Defendants.
_____/

Case No. 1:18-cv-785

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan. Plaintiff is proceeding *in forma pauperis*; thus, the Court is required to dismiss the action if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's equal protection claims against all Defendants. The Court will serve Plaintiff's remaining claims against Defendants Trierweiler, Makara, and Stutzman.

**Discussion**

I.  Factual allegations

Plaintiff sues IBC Warden Tony Trierweiler, IBC Captain Unknown Makara, and IBC Corrections Officer Unknown Stutzman. Plaintiff's claims arise out of incidents on December 8 and December 9, 2017. Plaintiff alleges that on those dates, Defendant Stutzman deliberately closed Plaintiff in his cell door while Plaintiff attempted to enter his cell. On December 8, Plaintiff was able to pry himself out of the door. He observed Defendant Stutzman smirking at him from the control panel. Plaintiff's wrist and midsection suffered "mild pain." (Compl., ECF No. 1, PageID.4.) The next day, Defendant Stutzman did it again.

Plaintiff filed a grievance against Defendant Stutzman on December 10. Defendant Makara was assigned to investigate the grievance. Plaintiff sought a different investigator because Plaintiff had previously filed a Prison Rape Elimination Act grievance against Captain Makara.

Defendant Makara failed to conduct an appropriate investigation of Plaintiff's grievance. Instead, Defendant Makara wrote a Class II misconduct report against Plaintiff for "interfering with the administration of rules" by filing a false grievance. Such a misconduct requires approval by the warden.[1] Defendant Trierweiler approved the filing of the misconduct report.

Plaintiff claims the conduct of Defendants violated his right to equal protection of the laws guaranteed by the Fourth Amendment, his right to be free of cruel and unusual punishment

---

[1] Under MDOC policy, such a misconduct report cannot be pursued without specific approvals:

If a grievant intentionally files a grievance which is investigated and determined to be unfounded which, if proven true, may have caused an employee or a prisoner to be disciplined or an employee to receive corrective action, the grievant may be issued a misconduct report if approved by the Warden or FOA Area Manager; however, major misconduct for Interference with the Administration of Rules shall be issued only if approved by the Warden or FOA Area Manager after consultation with the appropriate Deputy Director or designee.

MDOC Policy Directive 03.02.130 ¶ L (eff. 7/9/2007).

guaranteed by the Eighth Amendment, and his right to file a grievance guaranteed by the First Amendment.

Plaintiff seeks a declaration that Defendants have violated Plaintiff's rights as he has alleged and an award of nominal and punitive damages against each Defendant.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Plaintiff alleges that Defendant Stutzman deliberately disregarded a serious risk to Plaintiff's health and safety when he purposely shut the cell door on Plaintiff. Plaintiff's allegations suffice to state an Eighth Amendment claim against Defendant Stutzman.

IV. First Amendment Retaliation

Plaintiff next argues that Defendants Trierweiler and Makara retaliated against Plaintiff for his exercise of the right to file a grievance against Defendant Stutzman based on Stutzman's attempts to shut the cell door on Plaintiff. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff contends his filing of a prison grievance is protected under the First Amendment. The Sixth Circuit Court of Appeals has concluded that the filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Maben v. Thelen*, No. 17-1289, 2018 WL 1599335, at *6 (6th Cir. Apr. 3, 2018) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *Smith*, 250 F.3d at 1037.

If Plaintiff is telling the truth about Defendant Stutzman's attempts to close the cell door on Plaintiff, his grievance is nonfrivolous and protected under the First amendment. On the other hand, if Plaintiff is not telling the truth, his grievance would not be protected because it is frivolous or, alternatively, because it violates prison regulations. MDOC Policy Directive 03.02.130 ¶ L. "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in

'protected conduct,' and cannot proceed beyond step one." *Thaddeus–X*, 175 F.3d at 395. Plaintiff alleges that his grievance statements regarding Defendant Stutzman were true. The Court must accept that allegation as true at this stage of the litigation.

If Plaintiff's conduct in filing the grievance was protected by the First Amendment, the actions of Defendants Trierweiler and Makara in pursuing a false Class II misconduct charge against Plaintiff for filing the grievance was, on its face, plainly motivated by the protected conduct. Moreover, the threat of punishment from a Class II misconduct, and the actual loss of privileges that followed the finding of guilt here, constitute adverse action. *Maben v. Thelen*, 887 F.3d 252, 266-67 (6th Cir. 2018). Accordingly, Plaintiff's allegations suffice to state a claim against Defendants Trierweiler and Makara for retaliation in violation of the First Amendment.

V. Equal Protection

Finally, Plaintiff claims that he, as a class of one, was treated differently from other prisoners and other homosexuals when Stutzman deliberately closed the cell door on him. Plaintiff also claims that Defendants Trierweiler and Makara treated Plaintiff, as a class of one, differently than other prisoners who file grievances when they falsely accused him of filing an unfounded grievance. Accordingly, Plaintiff claims these Defendants have violated his right to equal protection of the laws under the Fourteenth Amendment.

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The amendment essentially directs that all person similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Otherwise lawful actions of the state can be rendered unlawful if the actions improperly discriminate among persons similarly situated. For example, when a law adversely impacts a "suspect class" such as one defined by race, alienage,

or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

There is some protection against state discrimination even where neither a fundamental right nor a suspect class is at issue. The Supreme Court acknowledged the viability of "class of one" equal protection claims in *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000), stating:

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *See Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336 (1989). In so doing, we have explained that "'[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sioux City Bridge Co., supra*, at 445 (quoting *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)).

*Village of Willowbrook*, 528 U.S. at 564.

Plaintiff takes the broad language of *Village of Willowbrook* and attempts to craft an additional layer of constitutional protection for state conduct, that if true, already violates the Eighth and First Amendments. Certainly, if a state actor is singling out a protected group as the target of unconstitutional activity there may be a greater wrong worthy of protection. Where, as here, the state actor had no right to take the action in the first instance and was merely arbitrary and irrational in selecting Plaintiff as the victim, it states no greater wrong to suggest that the state actor failed to take the unlawful action against others, similarly situated or otherwise.

The odd posture of Plaintiff's claim is reflected in his allegations:

7

30. Medlock was treated differently from other prisoners and other homosexuals when Stutzman deliberately slammed him in the cell door on multiple occasions. Medlock is personally aware of Stutzman's history of discrimination against homosexuals, however, he has never heard of other homosexuals being slammed in their cell door multiple times by the same officer.

31. Both Trierweiler and Makara have treated Medlock differently from other prisoners who filed grievances against staff harassment and abuse. While some deterrence is rational to avoiding abuse of the grievance system, there was no evidence Medlock filed a false grievance intentionally which would justify the misconduct. However, existing law and MDOC policy prohibit punishing someone for exercising the grievance process. Because Trierweiler and Makara deliberately violated law and policy when deciding to punish Medlock, he was treated differently from similarly situated prisoners.

(Compl., ECF No. 1, PageID.5-6.) Such conclusory allegations regarding similarly situated other prisoners do not suffice to state a "class of one" equal protection claim. *See, e.g., Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010) ("First, '[t]o satisfy [the Equal Protection Clause's] threshold inquiry, [plaintiffs] must allege that [they] and other individuals who were treated differently were similarly situated in all material respects.'"); *Steed v. Harry*, No. 1:17-cv-540, 2017 WL 3205764, at *6 (W.D. Mich. July 28, 2017) ("[Plaintiff's] vague, conclusory allegations of discrimination are not enough to state an equal protection claim. 'Some factual basis for such claims must be set forth in the pleadings.' [citations omitted] [Plaintiff] does not identify any other prisoners or explain how they were treated differently.")

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's equal protection claims against all Defendants will be dismissed for failure to state a claim, under 28 U.S.C. § 1915(e)(2). The Court will serve the complaint against Defendant Stutzman with respect to Plaintiff's claim under the Eighth Amendment and against Defendants Trierweiler and Makara with respect to Plaintiff's retaliation claim.

An Order consistent with this Opinion will be entered.

Dated:  September 6, 2018				/s/ Paul L. Maloney
							Paul L. Maloney
							United States District Judge