UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENDRICK MEDLOCK,

                Plaintiff,

v.

TONY TRIERWEILER, *et al.*,

                Defendants.

_____/

Case No. 1:18-cv-785

Hon. Paul L. Maloney

### REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendants Trierweiler, Makara, and Stutzman's motion for summary judgment (ECF No. 31).

### I.      Background

Plaintiff's complaint involves events which occurred at the Bellamy Creek Correctional Facility (IBC). Plaintiff sued three defendants employed at IBC, Warden Tony Trierweiler, Captain Makara, and Corrections Officer Stutzman. The Court previously summarized plaintiff's claims on initial screening:

> Plaintiff's claims arise out of incidents on December 8 and December 9, 2017. Plaintiff alleges that on those dates, Defendant Stutzman deliberately closed Plaintiff in his cell door while Plaintiff attempted to enter his cell. On December 8, Plaintiff was able to pry himself out of the door. He observed Defendant Stutzman smirking at him from the control panel. Plaintiff's wrist and midsection suffered "mild pain." (Compl., ECF No. 1, PageID.4.) The next day, Defendant Stutzman did it again.
>
> Plaintiff filed a grievance against Defendant Stutzman on December 10. Defendant Makara was assigned to investigate the grievance. Plaintiff sought a

different investigator because Plaintiff had previously filed a Prison Rape
Elimination Act grievance against Captain Makara.

Defendant Makara failed to conduct an appropriate investigation of
Plaintiff's grievance. Instead, Defendant Makara wrote a Class II misconduct report
against Plaintiff for "interfering with the administration of rules" by filing a false
grievance.  Such a misconduct requires approval by the warden. Defendant
Trierweiler approved the filing of the misconduct report.

Plaintiff claims the conduct of Defendants violated his right to equal
protection of the laws guaranteed by the Fourth Amendment, his right to be free of
cruel and unusual punishment guaranteed by the Eighth Amendment, and his right
to file a grievance guaranteed by the First Amendment.

Plaintiff seeks a declaration that Defendants have violated Plaintiff's rights
as he has alleged and an award of nominal and punitive damages against each
Defendant.

Opinion (ECF No. 5, PageID.47-48).  The Court dismissed the Equal Protection claims against all

defendants and directed service of the complaint against CO Stutzman for violation of the Eighth

Amendment and against Warden Trierweiler and Captain Makara for retaliation in violation of the

First Amendment.  *Id.* at PageID.53-54.

## II.    Motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is

genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions,
documents, electronically stored information, affidavits or declarations,
stipulations (including those made for purposes of the motion only), admissions,
interrogatory answers, or other materials; or

2

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).   However, the Court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.   Plaintiff's § 1983 claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."  *Smith v. City of Salem*, Ohio, 378 F.3d 566, 576 (6th Cir. 2004).   To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and

3

(2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

### 1.    Eighth Amendment claim against CO Stutzman

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  A viable Eighth Amendment claim consists of an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind.  *Hudson*, 503 U.S. at 8.

To demonstrate the objective component, the plaintiff must demonstrate that he has been deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes*, 452 U.S. at 346).  However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  "[R]outine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (internal quotation marks omitted).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

4

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.   "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In his complaint, plaintiff alleged the CO Stutzman engaged in cruel and unusual punishment because Stutzman closed plaintiff in his cell door:

> 16. On December 8, 2017, Stutzman closed Medlock in his cell door while he attempted to enter his cell. When Medlock was able to pry himself out of the door, he stepped into the hall and directly observed Stutzman smirking at him from the control panel.
>
> 17. Although Medlock's wrist and midsection were in mild pain, he did not seek medical attention due to being unable to afford it.
>
> 18. The next day, Stutzman again closed Medlock in the cell door under the same circumstances.  Medlock again observed Stutzman smirking from the control panel.
>
> 19. Medlock later spoke with a sergeant in the chow hall about being closed in the door two days in a row by Stutzman. Medlock was advised to file a grievance if he felt harassed.
>
> 20. Stutzman knew that closing Medlock in the cell doors could expose him to a substantial risk of serious harm and deliberately disregarded that risk.

Compl. (ECF No. 1, PageID.4).

CO Stutzman contends that plaintiff cannot meet the objective component of an Eighth Amendment claim for either incident.

### a.    December 8th

In support of his motion for summary judgment, CO Stutzman submitted a video of the incident.  *See* DVD (containing Videos 1, 2 and 3) (ECF No. 31-2).  It appears that this is the same video evidence that MDOC Officials reviewed in determining that plaintiff filed a false grievance against Stutzman for alleging closing him in the cell door.  In the December 8th incident, plaintiff leaves his cell, appears to have forgotten something, and returns to his cell between 0:00:45-0:00:50.  *Id.* at Video 1.  Plaintiff appears to put his foot in the cell door as it is closing, reach his arm in the cell, and stand outside the cell. About 28 seconds later, plaintiff walks away from the cell, in no apparent distress.  *See* Video 1 (0:00:50-0:01:18).  Shortly thereafter, plaintiff turned around, walked back toward his cell, picked up something from the floor, and proceeded down the hallway.  *Id.* at (0:01:19-0:01:50).

Having reviewed the video and other evidence submitted by defendant, the Court concludes that plaintiff failed to meet the objective component of an Eighth Amendment claim. There is no evidence that Stutzman closed the cell door on plaintiff and trapped him. For prisoners like plaintiff, automated doors are a way of life.  When a prisoner places his hand or foot in the path of a cell door as it is closing, the prisoner assumes the risk that he may be injured by the operation of the machinery.  Here, nothing in this video supports plaintiff's claim that he experienced "conditions intolerable for prison confinement," *Rhodes*, 452 U.S. at  348, or that he was subjected to "unnecessary and wanton infliction of pain," *Ivey*, 832 F.2d at 954, during the 28 seconds that he appeared to prop open the cell door.  Plaintiff's claims are blatantly contradicted by the video such that no reasonable jury could believe plaintiff's version of events. Accordingly,

6

this Court should not adopt plaintiff's version of the facts for purposes of ruling on defendants' motion for summary judgment. *See Scott*, 550 U.S. at 380.

Plaintiff filed a declaration in opposition to this motion, which he alleged that Stutzman closed the cell door on him as a form of "gay bashing."  Plaintiff's Decl. (ECF No. 35, PageID.223).  While plaintiff's statement appears to be an attempt to establish that Stutzman met the subjective component of his Eighth Amendment claim, the statement is not relevant because plaintiff failed to establish the objective component of the claim.  For these reasons, defendant Stutzman should be granted summary judgment on this claim.

### b.    December 9th

While plaintiff alleged that the same thing occurred on December 9th, the videos from that date do not show that plaintiff was trapped or stuck by his cell door or that he had to pry himself out. *See* Videos 2 (released for chow) and 3 (returning from chow). The videos only show prisoners leaving and entering their cells. *Id*.  Plaintiff contests the videos, stating that they were "deliberately shortened/altered by defendants' counsel so as to not show the fact that defendant Stutzman made me stand out in hallway almost 10 minutes . . . before he opened my cell which was <u>not</u> on group only to start shutting it just as fast so as to smash me w/door not trap me as defendants counsel keeps uttering."  Plaintiff's Decl. at PageID.224.

As an initial matter, plaintiff's declaration recites different facts than he alleged in his complaint.  Plaintiff did not allege that CO Stutzman made him wait out in the hallway all by himself for 10 minutes and then "smashed" him with the door.  While plaintiff contests defendants' response because counsel "keeps uttering" that plaintiff was "trapped" in the door, there appears to be a good reason for counsel's response – this is what plaintiff alleged in his complaint, *i.e.*, that CO Stutzman closed plaintiff in the cell door when he attempted to enter the cell, that plaintiff was

7

able to pry himself out of the door, and that his wrist and midsection were in mild pain. *See* Compl. at PageID.4. In short, the video does not depict the act of cruel and unusual punishment as alleged in the complaint. Furthermore, as discussed, *infra.*, the MDOC investigated the matter and ultimately found plaintiff guilty of a misconduct for submitting a false grievance about both of these incidents. For these reasons, defendant Stutzman should be granted summary judgment on this claim.

### 2. The Retaliation claims against Warden Trierweiler and Capt. Makara

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*.

Here, plaintiff claims that Warden Trierweiler and Capt. Makara retaliated against him because after plaintiff engaged in "protected conduct" by filing a grievance against CO Stutzman, Trierweiler and Makara charged plaintiff with a Class II Misconduct. Defendants contend that plaintiff's retaliation claim fails because he did not engage in "protected conduct;" rather, plaintiff filed a false grievance against Stutzman, was charged with a misconduct for filing the false grievance, and found guilty of that misconduct.

A prisoner can meet the first element of a retaliation claim by filing a grievance, because "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (internal quotation marks and brackets omitted). However, prisoners cannot base a retaliation claim on a

"frivolous" grievance or grievances which result from the "[a]busive or manipulative use of a grievance system." *Maben*, 887 F.3d at 264.  In this regard, a grievance is frivolous if it alleges conduct which fails to state a claim upon which relief may be granted.  *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (a prisoner's act of filing a grievance constitutes protected conduct "only to the extent that the underlying claims ha[ve] merit").   In addition, courts have considered a prisoner's grievance frivolous when the underlying incident being grieved itself is *de minimis*.  *Maben*, 887 F.3d at 264-65 (listing cases).  Finally, an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Spies v. Voinovich*, 48 Fed. Appx. 520, 525 (6th Cir. 2002).

As discussed, plaintiff filed a grievance against CO Stutzman.   After an investigation, plaintiff was issued a misconduct for interference with the administration of rules because it was determined that there was no evidence to support the grievance.  *See* Investigation Documents (ECF No. 31-3, PageID.165-186).  Plaintiff alleged that on December 8, 2017 at 1325 hours and on December 9, 2017 at breakfast, CO Stutzman closed the cell door on him. Memorandum (ECF No. 31-3, PageID.170).  Despite plaintiff's claim that Stutzman's conduct was so egregious as to be constitute cruel and unusual punishment, he refused to participate in the investigation of his claim against Stutzman ("On December 18, 2017 prisoner Medlock 263845 stated to Officer John Carter that he refused to go to the Control Center to speak to Captain Makara about this grievance").  *Id.* at PageID.172.  The investigation concluded that "[t]here is video evidence to support that Officer Stutzman did not shut Medlock in the cell door," and the investigator requested that plaintiff "receive a Class II Interference of Administration Rules misconduct for filing the false grievance that Officer Stutzman shut the cell door on him."  *Id*. at

PageID.173.  A hearing officer found plaintiff guilty of that misconduct because he filed a false grievance.  *See* Misconduct Hearing Report and Report (ECF No. 31-7, PageID.210-211).

Plaintiff's retaliation claim against Warden Trierweiler and Capt. Makara fails. Plaintiff did not engage in protected conduct because he abused the grievance system by filing a false grievance.  *See Maben*, 887 F.3d at 264. In addition, the grievance was frivolous because the underlying claim against Stutzman was meritless.  *See Herron*, 203 F.3d at 415.  Accordingly, Warden Trierweiler and Capt. Makara's motion for summary judgment should be granted.

### III.  Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (ECF No. 31) be **GRANTED** and that this action be **TERMINATED**.

Dated:  March 9, 2020                              /s/ Ray Kent
                                                   United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).